RAFAEL S. BAQUERO-GUIDINZA, Appellant, *v.* REGISTRAR OF SAN JUAN, Respondent.

No. 675. Submitted March 9, 1927.—Decided April 22, 1927.

*F. Soto Gras* for the appellant.   The registrar appeared by brief.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The owner of a suburban property, for the purpose of securing a loan, segregated and mortgaged two parcels of land. In the same instrument he created "in perpetuity" a "positive and discontinuous" predial servitude on the remainder of said property in favor of the mortgaged tenements.

After formal establishment of the servitude the deed provides that:

"The said servitude shall consist in the free use and enjoyment of a street as a means of ingress and egress to and from the dominant tenements. It shall traverse the servient tenement from the eastern to the western boundary.

"The undersigned owners of the servient tenement agree and bind themselves to remove in due time that part of the building covering a portion of the servient tenement, so that at no time and under no circumstances shall said construction be an obstacle or

impediment to the free use and enjoyment of the servitude or street agreed upon.

"For the purposes of record in the registry of property, the parties appraise this servitude at one hundred dollars."

The registrar of property refused to make any entry with regard to the servitude, upon the ground that it could not be established by the mortgagor as owner of both properties. In support of this ruling, the registrar says that, in accordance with the express terms of section 536 of the Civil Code, "the servitude is to be established on an immovable for the benefit of another tenement belonging to a different owner"; that if there was any doubt on this point it would be removed by section 553 of the Code, which provides that—

"Servitudes are extinguished: 1. By merger in the same person of the ownership of the servient and dominant tenements."

That when the law makes reference to the owners of both tenements it only relates to the one who has the ownership, to the exclusion of any other interest or right to the property; that the most that can be conceded in the instant case is that by virtue of the provisions of section 548 there is between the segregated parcels and the remainder of the property in question "an apparent sign of servitude" which may eventually give rise to a servitude if one of the tenements is alienated, without any previous binding effect, for the reason that said section makes the conversion of the "sign" into a servitude dependent on the absence of any objection on the part of any of the owners at the time of the conveyance; that as implied from section 553, which provides that servitudes shall be extinguished by the redemption agreed upon between the owners of the dominant and servient tenements, a servitude is a bilateral contract, and the owner of different properties can not contract with himself; that the easement must be granted and accepted; that the mortgagee's agreement as the sole consideration was not a safe basis for the establishment of an easement, for the

mortgagee can not be said to be the owner of an alleged dominant tenement which he does not even possess; that he has only a future right to have the property sold in order to satisfy the mortgage, and the ownership may fall to him or to somebody else, or the mortgage may be canceled without the necessity of a sale and this does not meet the requirements of the law for the establishment of a servitude; that in the latter instance, assuming the existence of the servitude, there would be no basis for considering it as extinguished, because it does not clearly appear that the servitude may be extinguished with the mortgage lièn, for want of any provision to that effect in section 553, *supra*, and that, as the creation and extent of the servitude had not been clearly defined and determined, the entry relative thereto would be null and void because of such uncertainty, by virtue of paragraph 2 of section 9, and in accordance with the express provision contained in section 30.

Section 536 does not say that the dominant tenement must belong to a different owner at the time of the creation of the servitude. The merger referred to in section 553 is an absolute, unrestricted and unconditional merger. The owner of the servient tenement would have no right to the cancellation of an entry showing the existence of a servitude, after a conveyance of the dominant tenement coupled with an agreement for reconveyance in case of reimbursement by the vendor of the consideration and payment of interest— nor after an absolute conveyance thereof, in the absence of a clause to that effect waiving the rights of the purchaser, and regardless of the rights of the mortgagee and of prospective purchasers at a foreclosure sale. The law in its provision for extinguishment by merger contemplates an absolute ownership, and the same principle is involved in the question already mentioned as to diversity of interests. The inchoate right may exist pending the occurrence of some future event, even though the privilege of exercising the same be deferred and made to depend upon the happening

of such event. There are certain distinctions, of course, but they arise out of the inherent difference between an original entry and the cancellation of a record, and have nothing to do with the status of the title.

The contract now before us is something more than an equivalent to the apparent sign mentioned in section 548 of the Civil Code. The apparent sign is not converted into a servitude, as the registrar alleges, upon the alienation of either of the tenements referred to in section 548. The pre-existing, latent and potential servitude established by the owner of both properties, upon alienation of either of them, continues to exist actively and passively, "unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument." The quasi-easement involved in such conveyance arises out of an implied agreement based on the existence of the apparent sign as evidence of such agreement, and therefore out of a form of title. The instrument now before us, in so far as it evidences the mortgagor's intention of creating a servitude, may be equivalent to an apparent sign, but it can not be limited in its legal effect to the status of an apparent sign pending a conveyance. Up to the time of such conveyance, the apparent sign is subject to the absolute control of the owner of both properties and may be removed or obliterated at will. In the instant case the instrument executed by the mortgagor for a good and valuable consideration, definitely determined the nature and extent of the easement intended to be created and placed its modification or extinguishment beyond the power or control of the said mortgagor. The creditor who parted with his money in consideration of the enhanced value of the mortgaged property as a result of the easement agreed upon as part of the contract obtained a vested right as a prospective purchaser and for the benefit of any future purchasers of the mortgaged property in case of foreclosure and sale. The

clause creating a servitude was as binding on the mortgagor from the moment of signature as was the obligation to pay the debt at maturity. On execution of the instrument containing that clause, the servitude in question was established as a charge on the servient tenement and as an appurtenance of the dominant tenement, which would inure to the benefit of all subsequent purchasers, even though they might not make use of the easement before acquisition of the dominant tenement, and even though the inchoate right might never ripen into actual enjoyment and exercise thereof.

For present purposes it may be conceded that on cancellation of the mortgage the clause which created the servitude would practically amount to an apparent sign, or that the resulting situation would be analogous to the one which might arise from the existence of an apparent sign before the alienation of either property by the owner of both, or after acquisition of either of them by the owner of the other. In any event, the cancellation in the registry of an entry as to the existence of a servitude together with the cancellation of the mortgage, if made at the request of the mortgagor as owner of both properties, could not prejudice anyone, and in such circumstances, we see no reason why the entry should not be either so canceled or else be permitted to remain in the registry at the option of such owner and for the benefit of future owners of the dominant tenement in case of a subsequent conveyance. This, however, is a question that need not be decided now.

Galindo and Escosura discuss a similar situation in volume 1 *Legislación Hipotecaria,* page 423, from which we take the following:

"In order to impose a servitude on an undivided property the consent of all the co-owners is necessary, although the grant made by one or some of them remains in suspension until all have agreed thereto, and it binds him or them and his or their heirs and assigns not to prevent the exercise of the right granted. (Sec. 597). Hence, if those who grant the easement should acquire the whole property

and their acquisition appears in the registry, that title would be sufficient to record the servitude.

"Is that concession eligible to record, even before the grantor acquires the whole property?

"If attention is paid to the fact that there is an actual limitation on the ownership, it seems that it should be recorded subject to the provision of section 1 of .the Rules; but if we consider that the grantee does not acquire a perfect right—so to speak, inasmuch as it remains in suspension—it seems that it should not be recorded.

"Our opinion is in favor of the record, because although it is true that the exercise of the right remains in suspension, it is after all a right—and a real right, too—for according to said section 597, it binds the heirs and assigns of the grantor, even though they hold under a private title, which if unrecorded could not prejudice third parties, and the code provision would become ineffective. All may be reconciled by a statement in the entry that the establishment of the servitude remains in suspension until all parties concerned acquiesce therein."

The ruling must be reversed.